NLRB v. Blue School Good morning, Your Honors, and may it please the Court, I'm Jared Odeski for the National Labor Relations Board. The Board seeks full enforcement of its orders so that this case can move to its compliance phase. The reason for enforcement is straightforward. Blue School's employees voted overwhelmingly for the union in a routine board election, and the School admittedly refused to bargain. Because Blue School can't meet its heavy burden to show that the election was invalid, its refusal to bargain violated the Act, and it's due time to see to what extent the Trustees are able to comply. Moving first to the meritless challenges that Blue School brings to the election, the Board properly revoked efforts here to litigate the showing of interest. The showing of interest, as the Circuit Courts from D.C. and Circuit Courts 4 through 10 have said, it is a non-litigable issue because it's for the Board to screen out cases that don't warrant its resources. The idea is that the election, not the showing of interest, is what decides the employer's obligations vis-à-vis the union. You said this is a routine board election? That's right. It seems a little odd because isn't it the case that the population, I mean this is the case in which the population of the teachers and the administrators changed radically from the time that there was the showing interest to the time that there was the election. Troy Barger, there's nothing strange in Board case law about fluctuating employment levels and changes. The proper time to measure... This was pretty unusual, wasn't it? I mean, it was, you had like 60, you had 93 employees, 63 of them faculty, voting in favor of showing interest. And by the time the voting began, there were 48 employees and 37, of which 37 were faculty, but a large number of those had been hired in the interval. So I believe there were seven faculty members that were recruited for the new school year, but many of the other faculty members stayed on, but it was about half of the workforce reduction. So it looks like the regional director decided, at the time of the showing of interest, it was known that large numbers of people were going to be fired because the school was non-viable, right? So that's not something that's measured at the showing of interest stage. The showing of interest is an imperfect measure. Well, what's the purpose of a showing of interest, except that the people in the bargaining unit are interested? It's for the board to determine for itself whether resources are warranted in conducting an election. And so the board determined, relying on the workforce that existed at the time that the position was filed, that enough of those employees had shown some interest. So the regional director makes this decision, right? Why wouldn't a regional director wait until he knew who was going to be in the bargaining unit, that is to say, who would be subject to being members of the union, before having the showing of interest vote? So two reasons, Your Honor. One is that it is for policy to measure the showing of interest at the time that the petition was filed. So the regional director was following standard board policy. By the way, who was the regional director? The regional director is an appointee in Manhattan for Region 2 of the NLRB. Whose name is what? I don't have the regional director's name on me. Do you have a name? John Walsh? But then the regional director also decided that the vote would take place while everybody in the unit was away, because it was summertime and this was a school. They had a skeleton crew, probably. So the vote would take place at a time when the school really couldn't weigh in on its side of the issue of whether people should join the union. The school did have an opportunity to weigh in.  So the employees throughout the summer had access to their school email accounts, and they were paid two times per month. And the employer, during this time, the petition filed June 7th, the election takes place August 16th through September 3rd, has plenty of time in that period to make its case against the union for the election. Isn't there an inconsistency between your position that the school employees are not seasonal, but yet they're scattered for the summer, and therefore you had to have a mail election? There's some inconsistency there, isn't there? No, Your Honor, I think they actually go together very well. So the fact that they're seasonal employees, or the fact that they're not seasonal employees, is because they are paid two times a month, and because the time period over the summer is part of their schedule. It is not a time when they are not employed, unlike the traditional seasonal employees, who may be, for example, farm workers or camp counselors, or not actually be employed the rest of the year, or not receiving pay. The summer break is part of the employees' schedules. And so it is by virtue of their schedules that they're scattered. And so that's why the scattering analysis is consistent with that finding. You said that they refused to bargain. They don't exist anymore, am I correct? I mean, all that's left is a few people who are administering probably remaining assets? So, I think two points, Your Honor, on that question. The school has dissolved, but the trustees continue to exist for purposes of settling these matters. Well, the trustees continue to exist. I mean, they get up, they have breakfast and everything, but the school doesn't. Right, and so the order here is not just with respect to the bargaining order. So here we also have a cease and desist order and a notice mailing requirement. Well, they would cease and desist. Obviously, they're going to cease and desist. How can they cease and desist from refusal to bargain when they're not at school anymore? It's forward-looking. So, for example, there are cases in which institutions reconstitute themselves after some period of time. And if it looks similar enough... And this is a situation in which the regional director thought it was worth the assets of the NLRB to conduct this election? So the regional director's decision was made in August. Well, the show and get interest was in June 2021. The election was ordered in August 2021. The school does not dissolve until January of this year. So it was not something that the regional director had in mind. The school continued to operate through the 2022 to 2023 school year. So that was not something the regional director was able to consider at that time. So if we enforce the order, what happens? So the board's process is bifurcated into two phases. We have the liability phase, which is the phase that we're asking the school to enforce. And then there's a compliance proceeding. So each region of the NLRB has a compliance team who will now look at the enforced order and see to what extent the trustees are able to comply. So they'll do an investigation to see to what extent there are assets left, to what extent there may be alter egos, successors, assignees. And then determine, is there any meaningful opportunity to bargain here? If not, what can we do to get as much of the order enforced as possible? So can we have a student assist order? Can we send notices? If there's not assets, for example, for the trustees to mail notices to these former employees, the process is very flexible such that, you know, just speculating here, email notices are possible. I do want to emphasize that notices are very important. As the Supreme Court said in Hoffman Plastic, even just a cease and desist order and a notice posting or notice mailing are a really meaningful remedy. And that's because it's important for employees as they move forward in other workplaces, even if this workplace is indeed defunct, that they know their Section 7 rights are real and are going to be recognized. And the notices would go to the trustees? The trustees would be mailing out the notices to the employees who the employer did not bargain with. So the enforcement here is, there's no employer and there's no employees, but you're charging right ahead. So I think two points on that, Your Honor. One, the motion is counter-ruling. It's the Court's position, is the law of the case here with respect to the motion to dismiss on the mootness question. And as this Court said in Doe v. United States, that's 815 Federal Appendix 592, where a motion panel is entitled to a lady consideration where the motion was fully briefed and addressed by two sophisticated parties and the motion panel directly addressed a jurisdictional question. So you say that the enforcement part of this still remains and has not been decided? The enforcement part of it, the question of to what extent the employer is able to comply with the order is the next phase in the process. So the Board is seeking the enforcement part of it. I thought you were reserving the imposition of back pay. So that is a separate issue that the Board has retained. And even though you've retained it, you think we still have a final order? That's right. So under 10C and 10E of the Act, the requirements for finality for a board order is that there is a finding of liability, a cease and desist order, and a requirement to take some affirmative action. It doesn't say that all affirmative action is required. And the D.C. Third and Ninth Circuits have, with respect to the exact same remedial issue here, have said that that does not negate the jurisdiction. You would have to change your regulations in order to seek back pay, correct? That's a good question. The Board, it's something, the position the General Counsel has argued, the Board has not decided that question yet. But you're reserving the ability to litigate that in this case? Yes, as part of a separate order. I like your chances, considering that there's nobody on the other side. Yes, I think it's a real question, but it's a question for the compliance proceeding, as the motions pan out properly. The Third, the Ninth, and the D.C. Circuit comes out your way. Any cases go the other way? Not right now. Okay. All right. Thank you, Counsel. Thank you.